# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>           Plaintiff,<br><br>      v.<br><br>FATEMAH SANIEFAR, et al.,<br><br>           Defendants.<br>_____/ | Case No. 1:14-cv-01067-SKO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S CLAIMS**<br><br>**(Doc. 90)** |

Before the Court is Defendants' Motion for Summary Judgment, or Alternatively Summary Adjudication ("Defendants' Motion"). (Doc. 90.) For the reasons provided herein, the Court GRANTS Defendants' Motion, (*id.*), and DISMISSES all of Plaintiff's claims.

## I.   BACKGROUND

This action involves allegations that features of a restaurant owned or operated by Defendants (the "Building") violate certain provisions under the Americans with Disabilities Act (the "ADA") and California state law. The Building is "located at 4030 N. Blackstone Ave., Fresno, CA" and is owned by "the Bost Trust" to "this day." (Doc. 89, Ex. 2 ¶ 1.) On April 14, 2014, the Building was occupied by a restaurant "known as 'Zlfred's.'" (*Id.* ¶ 2.) "On or about February 1, 2015," the Building "was leased to" an individual "who opened a new restaurant named 'Yem Kabob.'" (*Id.* ¶ 3.)

Plaintiff asserts that he "suffers from hydrocephalus . . . , degenerative disc disease, and chronic pain syndrome." (Doc. 89, Ex. 1 at 9.) Plaintiff further asserts that, "[a]s a result of his medical conditions, [he] is substantially limited in his ability to walk" and, as such, qualifies as disabled under the ADA. (*Id.* at 10.)

Plaintiff filed the operative Complaint on June 4, 2015. (Doc. 32.) In the Complaint, Plaintiff alleges that he "visited" the Building on April 14, 2014. (*Id.* ¶ 11.) Plaintiff alleges that, during this visit, he encountered a series of structural and non-structural barriers. (*Id.*; *see also id.* (describing the barriers Plaintiff allegedly encountered during an April 14, 2014 visit to the Building).) Beyond these barriers that Plaintiff purportedly "personally encountered," Plaintiff also alleges that he "is aware of" numerous additional "barriers which exist at the [Building] and relate to his disabilities." (*Id.* ¶ 12; *see also id.* (providing Plaintiff's description of these additional alleged barriers).)

In Plaintiff's First Claim, Plaintiff alleges that Defendants violated the ADA by (1) "denying Plaintiff 'full and equal enjoyment' and use of the goods, services, facilities, and privileges and accommodations of the [Building]," (*id.* ¶ 22); (2) failing to remove the architectural barriers at the Building, an existing facility, (*see id.* ¶¶ 23–27); (3) designing and constructing the Building "in a manner that was not readily accessible to the physically disabled public," (*id.* ¶ 30); (4) altering the Building "in a manner that violated the ADA on or before Plaintiff's April 14, 2014 visit" without making "the [Building] readily accessible to the physically disabled public," (*id.* ¶ 33); and (5) "failing to make reasonable modifications in policies, practices, or procedures at the [Building] at or prior to Plaintiff's April 14, 2014 visit . . . when these modifications were necessary to afford . . . these goods, services, facilities, or accommodations to Plaintiff," (*id.* ¶ 36). The Complaint also includes the following two claims under California state law: (1) Second Claim—a claim that Defendants violated certain provisions of the Unruh Act, including, in part, by acts and omissions that violated the ADA, (*see id.* ¶¶ 39–46); and (2) Third Claim—a claim that Defendants violated provisions of the California Health and Safety Code, (*see id.* ¶¶ 47–51). Finally, the Complaint includes the following requests for relief: (1) "[a]n injunction requiring that" Defendant Alireza Saniefar, trustee of the Bost Trust,

"make the [Building] fully accessible to Plaintiff under both state and federal accessibility standards;" (2) "[d]eclaratory relief that Defendants violated the ADA at the time of Plaintiff's April 14, 2014 visit to the [Building] for purposes of Unruh Act damages;" (3) "[s]tatutory minimum damages of $4,000 under section 52(a) of the California Civil Code;" (4) "[a]ttorneys' fees, litigation expense[s], and costs of suit," including "attorneys' fees under California Code of Civil Procedure § 1021.5;" and (5) "[i]nterest at the legal rate from the date of the filing of this action." (*Id.* at 12.)

"When Defendants were served with the Complaint, they hired a Certified Access Specialist . . . to [r]eview the [Building]." (Doc. 101, Ex. 1 ¶ 30.) After receiving the assessment from this Certified Access Specialist, "Defendant[s] hired a contractor to address all the issues identified" in the Complaint. (*Id.* ¶ 31.) Defendants assert that these efforts promptly resulted in the removal of the alleged barriers. (*See, e.g.*, Doc. 97 at 11 ("As soon as Defendants were made aware of issues, they immediately fixed them to achieve compliance.").) The parties now agree―solely for purposes of Defendants' Motion―that all of the alleged barriers have been removed and the Building is now compliant with the ADA and California state law. (*See, e.g.*, Doc. 90, Ex. 1 at 9 ("[A]ll alleged barriers meet current construction standards under the ADA and California law . . . ."); Doc. 91 at 6 ("[F]or purposes of [Defendants' Motion] only, Plaintiff takes Defendants at their word that they have brought all of the barriers listed in his [C]omplaint into compliance with the codes."); Doc. 101, Ex. 1 ¶ 15 (providing Plaintiff's statement that it is "[u]ndisputed for purposes" of Defendants' Motion that "[t]here are currently no barriers to disability access at" the restaurant).) Defendant Alireza Saniefar, trustee of the Bost Trust, also filed a declaration in which he states that he "fully intend[s] to make sure that the [Building] remains compliant to the full extent of [his] control and legal ability." (Doc. 97, Ex. 3 ¶ 4; *cf.* Doc. 101, Ex. 1 ¶ 32 (providing Plaintiff's assertion that the Bost Trust "has sought to abdicate [his] legal responsibility to monitor compliance on [the] property to the tenant").)

Additionally, the Bost Trust "has entered into a 5-year agreement with a" Certified Access Specialist "to check" the property quarterly for compliance. (Doc. 101, Ex. 1 ¶ 33; *see also* Doc. 97, Ex. 4 at 2 (constituting an agreement between "Bost Trust, c/o Ali Saniefar, Trustee" and the

3

Certified Access Specialist, Kelly Bray, in which Ms. Bray agrees to inspect the property located at "4030 N. Blackstone[,] Fresno, [CA]" on a quarterly basis between March 2017 and December 2021 "to confirm that the condition of the property complies with the [ADA]").) Defendants also state that the Bost Trust "has notified the current tenant of the [Building] about what it must and must not do to maintain compliance with disability access laws." (Doc. 101, Ex. 1 ¶ 34; *see also* Doc. 97, Ex. 6 at 2–5 (constituting a letter from Defendant Alireza Saniefar, "Trustee, Bost Trust" to "Ammar" at Yem Kabob, 4030 North Blackstone Ave., Fresno, California 93726, in which Defendant Alireza Saniefar states that "Yem Kabob owners, managers and employees need to ensure that" the items listed in an attached list "stay in their current compliant status"); *cf.* Doc. 101, Ex. 1 ¶ 34 (providing Plaintiff's assertion that "[t]here is no evidence that the [n]otice was ever received by the [t]enant").)

Defendants filed Defendants' Motion on November 23, 2016. (Doc. 90.) Plaintiff filed his opposition to Defendants' Motion on December 16, 2016, (Doc. 91), and Defendants filed their reply in support of this motion on February 8, 2017,[1] (Doc. 102). As such, Defendants' Motion is fully briefed and ready for disposition.[2]

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 56 governs motions for summary judgment," *Smith v. Union Pac. R.R. Co.*, No. 2:12–cv–00656–TLN–CKD, 2013 WL 5718874, at *2 (E.D. Cal. Oct. 16, 2013), and provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court "must draw all reasonable inferences supported by the evidence in favor of the non-moving party and then decide whether any genuine issues of material fact exist." *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

---

[1] By its order entered on December 28, 2016, the Court granted the parties' request for an extension for the briefing pertaining to Defendants' Motion and ordered that "Defendants shall file their reply brief in support of [Defendants' Motion] by February 8, 2017." (Doc. 95.)

[2] By its order entered on February 13, 2017, the Court found that "Defendants' Motion [is] suitable for decision without oral argument." (Doc. 104.) The Court therefore vacated the hearing regarding Defendants' Motion. (*Id.*)

4

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A material fact is one that may affect the outcome of the case under the applicable law." *Cotta v. Cty. of Kings*, 79 F. Supp. 3d 1148, 1156 (E.D. Cal. 2015) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see, e.g.*, Fed. R. Civ. P. 56(c)(1)(A) (stating that a party seeking summary judgment must support their motion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").  "The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof." *Cotta*, 79 F. Supp. 3d at 1157 (citations omitted).  "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984.  On the other hand, a moving party that does not carry "the ultimate burden of persuasion at trial" must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03 (citations omitted).  "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." *Id.* at 1103 (citation omitted).

However, "[i]f the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a

genuine issue for trial.'" *Soremekun*, 509 F.3d at 984 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 250). Stated differently, "[i]n order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in its favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (citing *Liberty Lobby, Inc.*, 477 U.S. at 257). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Id.* (citing *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007)); *see, e.g.*, *Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." (citations omitted)); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) ("Once the [moving party] has made a prima facie case for summary judgment, the [non-moving party] cannot rely on general denials; [they] must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial." (citing *Liberty Lobby, Inc.*, 477 U.S. at 249–50)).

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. "That remains the province of the jury or fact finder." *Cotta*, 79 F. Supp. 3d at 1157 (citation omitted). "Rather, [the court] draws all inferences in the light most favorable to the nonmoving party." *Soremekun*, 509 F.3d at 984 (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987)). "The evidence presented by the parties must be admissible." *Id.* (citing Fed. R. Civ. P. 56(e)).

### III. DISCUSSION

In Defendants' Motion, Defendants argue that they have remedied the alleged ADA violations, thereby rendering Plaintiff's sole federal claim (the First Claim) moot. (*See* Doc. 90, Ex. 1 at 8–10.) Defendants then argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. (*See id.* at 10–16.) For the reasons that follow, the Court agrees with Defendants' position.

**A.     Mootness Inquiry**

Defendants first argue that Plaintiff's sole federal claim—the First Claim, which includes allegations that Defendants violated certain provisions of the ADA—is now moot. (*See id.* at 8–10.) The Court finds that this argument has merit.

1.     Overview of the ADA

"The ADA was enacted 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (quoting 42 U.S.C. § 12101(b)(2)). "The concept of 'discrimination' under the ADA does not extend only to obvious exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance." *Id.* at 945. "Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Id.* (quoting 42 U.S.C. § 12182(a)).

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b) & 12182(a)). "The standard for discrimination depends on whether the public accommodation is an existing facility or a newly constructed facility." *Dodson v. Joseph Esperanca, Jr., LLC*, No. 2:12–cv–02132–TLN–EFB, 2013 WL 6328274, at *2 (E.D. Cal. Dec. 4, 2013). "In the context of existing facilities, discrimination includes 'a failure to remove architectural barriers . . . where such removal is readily achievable.'" *Chapman*, 631 F.3d at 945 (alteration in original) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). "In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Id.* (quoting 42 U.S.C. § 12183(a)(1)).

"Congress charged the Attorney General with the task of promulgating regulations to enforce the ADA." *Dodson*, 2013 WL 6328274, at *2 (citing 42 U.S.C. § 12186(b)). *See*

7

*generally Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024–27 (9th Cir. 2008) (describing the ADA's regulatory framework). These regulations "provide[] the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945. These regulations "are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Id.* at 945–46 (citations omitted).

"The enforcement provisions of the [ADA] provide that . . . . a person aggrieved by a violation of the [ADA] may file a 'civil action for preventive relief, including an application for a permanent or temporary injunction.'" *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1174 (9th Cir. 2010) (citations omitted) (quoting 42 U.S.C. § 2000a–3(a)). In other words, the ADA "permits private lawsuits against businesses that fail to accommodate individuals with disabilities." *Johnson v. Wayside Prop., Inc.*, 41 F. Supp. 3d 973, 976 (E.D. Cal. 2014) (citing 42 U.S.C. § 12188(a)). However, "[i]njunctive relief is the sole remedy available to private parties under the [ADA]; it does not authorize a claim for money damages." *Antoninetti*, 643 F.3d at 1174 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002)).

2.  Mootness Analysis

The Court now turns to Defendants' mootness argument. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Id.* "Article III of the United States Constitution limits federal court jurisdiction to 'actual, ongoing cases or controversies.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). "Its judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser*, 422 U.S. at 401). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Further, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).

"If the controversy is moot, . . . the trial . . . court[] lack[s] subject matter jurisdiction and the concomitant power to declare the law by deciding the claims on the merits." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citation omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (alteration in original) (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999)).

"The underlying concern" of the mootness doctrine "is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *City of Erie*, 529 U.S. at 287 (citations omitted). "In that case, any opinion as to the legality of the challenged action would be advisory." *Id.*

"[I]n deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available." *Or. Nat. Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006) (alteration in original) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988)). Rather, "[t]he basic question

in determining mootness is whether there is a *present* controversy as to which effective relief can be granted." *Gordon*, 849 F.2d at 1244 (citation omitted). In other words, "moot cases [are] those which have lost their character as present, live controversies." *Id.* (citation omitted). Thus, "[i]f an event occurs" during the litigation "that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (citations omitted); *see, e.g.*, *Horizon Bank & Tr. Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004) ("[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." (citing *Weinstein v. Bradford*, 423 U.S. 147, 148–49 (1975))); *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, No. 2:14–cv–01513–MCE–DAD, 2015 WL 2358620, at *2 (E.D. Cal. May 15, 2015) ("When a case becomes moot, federal courts lose jurisdiction." (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992))). In the context of ADA cases, "[b]ecause a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (citations omitted).

Here, it is uncontested for purposes of Defendants' Motion that Defendants have voluntarily remedied all alleged barriers. (*See* Doc. 90, Ex. 1 at 9 ("[A]ll alleged barriers meet current construction standards under the ADA and California law . . . ."); Doc. 91 at 6 ("[F]or purposes of this motion only, Plaintiff takes Defendants at their word that they have brought all of the barriers listed in [Plaintiff's Complaint] into compliance with the codes."); Doc. 101, Ex. 1 ¶ 15 (providing Plaintiff's statement that it is "[u]ndisputed for purposes" of Defendants' Motion that "[t]here are currently no barriers to disability access at" the Building).) This voluntary remediation of the alleged barriers indicates that Plaintiff's ADA claim is moot. *See, e.g.*, *Corless v. Cole*, Civ. No. 13–00700 ACK–BMK, 2014 WL 2892362, at *8 (D. Haw. June 25, 2014) ("In the context of claims brought under the ADA, mootness is typically found in cases where the defendants fix or remedy all non-compliant ADA barriers.").

Plaintiff nonetheless argues that his ADA claim is not moot due to the voluntary cessation doctrine. (*See* Doc. 91 at 7–12.) The Court disagrees.

"Courts have long recognized a 'voluntary cessation exception' to mootness." *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1187 (E.D. Cal. 2015) (quoting *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009)); *see, e.g. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" (quoting *City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 289 (1982))); *Zaldivar v. City of San Diego*, CASE NO. 15CV67-GPC(RBB), 2016 WL 5118534, at *10 (S.D. Cal. Sept. 21, 2016) ("The voluntary cessation doctrine is an exception to the general rule that a case is mooted by the end of the offending behavior."). "Under this doctrine, when a defendant's voluntary cessation of a challenged activity is the basis for mootness, it becomes the defendant's burden to demonstrate that 'subsequent events made it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.'" *Moore*, 85 F. Supp. 3d at 1187 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189; *cf. Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992) ("Voluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (citing *Davis*, 440 U.S. at 631)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "This is because 'otherwise they would simply be free to return to (their) old ways after the threat of a lawsuit had passed.'" *Moore*, 85 F. Supp. 3d at 1187 (quoting *Armster v. U.S. Dist. Court for Cent. Dist. of Cal.*, 806 F.2d 1347, 1359 (9th Cir. 1986)).

In the context of ADA claims, "[c]ourts have held that where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future since structural modification undo the offending conduct." *Zaldivar*, 2016 WL 5118534, at *10 (collecting cases). When considering non-structural features, on the other hand, courts have found that "voluntary remediation of" these violations do "not moot an issue"

because the violations "could easily reoccur." *Id.* (citations omitted).  Nonetheless, "[i]n making a determination about whether the facts indicate a danger of future violations . . . , [courts] consider[] the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, No. CV025088RGKMCX, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (citation omitted); *cf. Langer v. G.W. Props., L.P.*, Case No. 15-cv-02443-BAS(BLM), 2016 WL 3419299, at *4 (S.D. Cal. June 21, 2016) ("When determining whether behavior can reasonably be expected to recur, courts consider various issues, such as the (a) motivation behind the conduct, (b) reasons for the change in conduct, (c) volitional nature of the conduct, (d) length of time between the change in conduct and the complaint, and (e) ownership status of the defendant in relation to the property." (citations omitted)).

In this case, the pertinent considerations weigh in favor of finding that the violations―even those pertaining to non-structural issues―are not reasonably likely to recur. Defendants remedied the alleged violations immediately after the initiation of this action. (*See, e.g.*, Doc. 97 at 11 ("As soon as Defendants were made aware of issues, they immediately fixed them to achieve compliance.").)  As such, it is uncontested for purposes of Defendants' Motion that all of the purported violations have been brought into compliance with the ADA's requirements. (*See, e.g.*, Doc. 90, Ex. 1 at 9 ("[A]ll alleged barriers meet current construction standards under the ADA and California law . . . ."); Doc. 91 at 6 ("[F]or purposes of [Defendants' Motion] only, Plaintiff takes Defendants at their word that they have brought all of the barriers listed in his [C]omplaint into compliance with the codes.").)

Additionally, it is uncontested that Defendants have taken substantial affirmative steps to become compliant and prevent future violations.  Upon receiving the Complaint in this action, Defendants hired an experienced Certified Access Specialist to review the site. (*See* Doc. 101, Ex. 1 ¶ 30.)  After receiving the assessment from this specialist, Defendants then hired a contractor to resolve the violations. (*See id.* ¶ 32.)  Defendants also took steps to prevent future violations by entering into a five-year contract with a Certified Access Specialist to assess the property on a quarterly basis for compliance, (*see* Doc. 97, Ex. 3 ¶ 6; *see also id.*, Ex. 4 at 2 (constituting an

agreement between "Bost Trust, c/o Ali Saniefar, Trustee" and the Certified Access Specialist, Kelly Bray, in which Ms. Bray agrees to inspect the property on a quarterly basis between March 2017 and December 2021 "to confirm that the condition of the property complies with the [ADA]")), and issuing a notice to the tenants of the property regarding their obligation to ensure that the property remains in compliance between inspections, (*see id.*, Ex. 6).  These affirmative steps indicate that the violations are not reasonably likely to recur.  *See, e.g.*, *Turner v. Anand*, No. 14–cv–01147–BAS(PCL), 2015 WL 4474671, at *7 (S.D. Cal. July 21, 2015) (finding that the violations, including those pertaining to non-structural issues, could not "reasonably be expected to recur" and dismissing the plaintiff's ADA claim where the defendants "did not have a history of violating" the ADA and, following the initiation of the litigation, the defendants created a policy that "call[ed] for an annual inspection" for "compliance, and immediate notification should any defects be discovered between inspections").

Finally, there is no indication in the record that Defendants have any history of violations, or an intention to again violate the ADA.  Defendants contend―and Plaintiff does not dispute―that Defendants were not aware of the alleged violations prior to the initiation of this suit.  (*See, e.g.*, Doc. 102, Ex. 1 at 20.)  As such, Defendants do not have a history of evading or failing to remedy violations.  *Cf. Turner*, 2015 WL 4474671, at *7 (finding that the alleged "behavior" that violated the ADA could not reasonably be expected to recur where, in part, the defendants "did not initially have an access policy in place, and therefore did not have a history of violating that policy").  Further, Plaintiff has not directed the Court to any evidence in the record indicating an intent on the part of Defendants to again violate the ADA in the future.  (*Cf.* Doc. 97, Ex. 3 ¶ 4 (constituting the declaration of Alireza Saniefar, the trustee of the Bost Trust, in which he states that he "fully intend[s] to make sure that the [Building] remains compliant to the full extent of [his] control and legal ability").)  This absence of a pertinent history of violations―or any evidence of Defendants' intention to again violate the ADA―indicates that future violations are not reasonably likely to occur.  *Cf. Clavo v. Zarrabian*, No. SACV03864CJCRCX, 2004 WL 3709049, at *4 (C.D. Cal. May 17, 2004) (finding that the plaintiff's ADA claim was not moot where, in pertinent part, the defendants "had an entrenched policy of blocking access to" a

13

"wheelchair accessible gate and check-out aisle" and, "despite [the plaintiff's] complaint, [the defendant] failed to change that policy until after th[e] case was filed"); *Watanabe*, 2003 WL 24272650, at *4 (finding that the plaintiff's ADA claim was not moot where, in relevant part, there was "no evidence" (1) "of any expressed intent of [the defendant] to comply with ADA requirements," or (2) "that [the defendant] . . . made any changes with respect to the[] policies or procedures that would prevent" future ADA violations).

Based on this record, the Court finds that Defendants have met their heavy burden by showing that it is absolutely clear that the alleged wrongful behavior—*i.e.*, the alleged barriers—cannot reasonably be expected to recur.  Consequently, the voluntary cessation exception to the mootness doctrine is inapplicable here and Plaintiff's ADA claim is moot.  *Cf. Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1187 (E.D. Cal. 2015) ("[W]hen a defendant's voluntary cessation of a challenged activity is the basis for mootness, it becomes the defendant's burden to demonstrate that 'subsequent events made it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))).  As this claim is moot, the Court lacks subject-matter jurisdiction over Plaintiff's ADA claim.  *See, e.g.*, *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) ("If the controversy is moot, . . . the trial . . . court[] lack[s] subject matter jurisdiction and the concomitant power to declare the law by deciding the claims on the merits." (citation omitted)).  The Court therefore finds that Plaintiff's ADA claim—the First Claim in the Complaint—must be dismissed.  *See, e.g.*, *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) ("If there is no longer a possibility that [a party] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." (quoting *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999))).

For these reasons, the Court DISMISSES Plaintiff's First Claim, (*see* Doc. 32 ¶¶ 17–38), WITH PREJUDICE.

**B.   Supplemental Jurisdiction**

Defendants also argue that, as Plaintiff's sole federal claim is properly dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  (*See* Doc.

90, Ex. 1 at 10–16.) The Court again agrees with Defendants' position and finds that it is inappropriate for the Court to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.[3]

---

[3] Defendants argue, in part, that the Court *must* dismiss Plaintiff's state law claims if it dismisses Plaintiff's sole federal claim for lack of subject-matter jurisdiction. (Doc. 90, Ex. 1 at 13.) The Court finds that this argument has merit.

"Pursuant to the supplemental jurisdiction statute, when a district court dismisses on the merits a federal claim over which it had original jurisdiction, it may then decline to exercise supplemental jurisdiction over the remaining state claims, subject to the factors set forth in [28 U.S.C. § 1367(c)(1)–(4)]." *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) (citation omitted). "The court may exercise that supplemental jurisdiction, however, only if it has the 'power to hear state law claims.'" *Id.* (quoting *Kohler v. Inter–Tel Techs.*, 244 F.3d 1167, 1170 (9th Cir. 2001)). On this point, "[a] dismissal on the merits is different from a dismissal on jurisdictional grounds." *Id.* "If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims . . . ." *Id.* However, "if the court dismisses" all federal claims "for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims." *Id.* "Dismissal on jurisdictional grounds means that the court was without original jurisdiction and had no authority to do anything other than to determine its jurisdiction." *Id.*; *cf.* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

In this case, the Court held subject-matter jurisdiction over this case due solely to Plaintiff's ADA claim. (*See, e.g.*, Doc. 32 ¶ 3.) However, as discussed herein, the Court dismisses that claim for lack of subject-matter jurisdiction. As such, the Court has no present subject-matter jurisdiction over this matter. Absent subject-matter jurisdiction, the Court holds no discretion to consider Plaintiff's state law claims. Instead, "there [is] nothing left to do but dismiss the case." *Herman Family Revocable Tr.*, 254 F.3d at 807; *see, e.g.*, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiff nonetheless argues that the Court retains discretion as to whether to exercise supplemental jurisdiction because the Court previously held subject-matter jurisdiction over the case. (*See* Doc. 91 at 13–14.) The Court disagrees. As numerous courts in this Circuit have found, remedial measures instituted after the initiation of the litigation that render an ADA claim moot deprive the court of subject-matter jurisdiction, thereby precluding any discretion to retain the remaining state law claims. *See, e.g.*, *Jinkins v. Irvine Props.*, Case No. 8:15-CV-00670-ODW-SS, 2016 WL 3344374, at *2 (C.D. Cal. June 8, 2016); *Langer v. Kacha*, Case No. 14-cv-2610-BAS(KSC), 2016 WL 524440, at *5 (S.D. Cal. Feb. 10, 2016); *Brooke v. Kalthia Grp. Hotels*, CASE NO. 15cv1873-GPC(KSC), 2015 WL 7302736, at *8–9 (S.D. Cal. Nov. 18, 2015); *see also Orozco v. Borenstein*, No. CV–11–2305–PHX–FJM, 2012 WL 3762408, at *5 (D. Ariz. Aug. 29, 2012) ("Because we have dismissed the federal claim as moot, we have no original jurisdiction upon which supplemental jurisdiction could attach."). The Court agrees with these decisions and finds that, once the Court dismissed Plaintiff's ADA claim for lack of jurisdiction, it lost the sole source of subject-matter jurisdiction on which to hook Plaintiff's state law claims. *Cf. Herman Family Revocable Tr.*, 254 F.3d at 805 (stating that the "plain language" of 28 U.S.C. § 1367(a) "makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it"). *See generally Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) ("Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999))). The only remaining course is to dismiss Plaintiff's remaining state law claims without prejudice. *See, e.g.*, *Rodriguez v. Ralphs Grocery Co.*, 323 F. App'x 617, at *1 (9th Cir. 2009) ("[I]f the federal claim is dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain supplemental claims for adjudication, and must dismiss the state law claims without prejudice . . . ." (citing *Herman Family Revocable Tr.*, 254 F.3d at 805–07)).

Nonetheless, the Court notes that there appears to be a conflict in the case law on this topic. In particular, while not citing the Ninth Circuit's decision in *Herman Family Revocable Trust*, some courts in this Circuit address the discretionary analysis pursuant to 28 U.S.C. § 1367(c)(3) even after dismissing the plaintiff's sole federal claim―including claims under the ADA―as moot. *See, e.g.*, *Pickern v. Best W. Timber Cove Lodge Marina Resort*, 194 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002). The Court therefore finds that an alternative finding under Section 1367(c)(3) is warranted.

28 U.S.C. § 1367 "codifies and limits the doctrine of pendant claim jurisdiction." *Jeffrey v. Home Depot U.S.A., Inc.*, 90 F. Supp. 2d 1066, 1070–71 (S.D. Cal. 2000) (citation omitted). The decision of whether to retain "jurisdiction under § 1367(c) must be reached through a two-step analysis": (1) "the [c]ourt must determine [whether] one of the 'factual predicates' of § 1367(c)(1)–(3) exists;" and (2) "the [c]ourt must decide [whether] declining jurisdiction best serves the values of economy, convenience, fairness, and comity established by" the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). *Jeffrey*, 90 F. Supp. 2d at 1071 (citation omitted).

Regarding the first inquiry—and as pertinent here—28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Supreme Court noted that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[A] complaint making an unfounded claim of federal right might nonetheless provide a federal court the opportunity to determine an issue of state law." *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (citation omitted). "Section 1367(c)(3) reflects this concern by expressly enabling federal courts to avoid determining an issue of state law when the federal claim, on which its jurisdiction rests, proves to be unfounded." *Id.*

Here, the Court previously dismissed the sole claim over which it held original jurisdiction—Plaintiff's ADA claim. As such, the factual predicate under Section 1367(c)(3) is satisfied.

As to the second inquiry, "[f]actors courts consider in deciding whether to dismiss supplemental state claims include judicial economy, convenience, fairness, and comity." *Kolstad v. Cty. of Amador*, Civ. No. 2:13–01279 WBS EFB, 2014 WL 556009, at *4 (E.D. Cal. Feb. 12, 2014) (citing *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005)). "[I]n the usual

case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Pickern v. Best W. Timber Cove Lodge Marina Resort*, 194 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002) (alterations in original) (quoting *Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997)). Additionally, "[s]ome circuits have held that a court may retain jurisdiction over state law claims if extraordinary or unusual circumstances justify their retention." *Id.* (citations omitted).

The Ninth Circuit "has advised that when all federal law claims are eliminated before trial, the district court is 'duty-bound to take seriously' the responsibility to decline or retain jurisdiction over any remaining state law claims." *Int'l Longshore & Warehouse Union v. Port of Portland*, 844 F.3d 864, 865 n.1 (9th Cir. 2016) (quoting *Acri*, 114 F.3d at 1001). "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007).

In this case, the interests of judicial economy and comity strongly weigh in favor of the Court declining to exercise supplemental jurisdiction. Plaintiff's sole federal claim has now been dismissed on jurisdictional grounds and the Court has not yet ruled on the merits of Plaintiff's state law claims. Absent any remaining source of original jurisdiction for this Court, these determinations are properly reserved to the state court. *See, e.g.*, *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

The Court is cognizant of the present posture of this case and the efforts of the parties during this litigation. Nonetheless, the Court finds that any inconvenience to the parties is outweighed by the interest in the state courts in disposing of Plaintiff's remaining state law claims in this matter. *See, e.g.*, *Pickern*, 194 F. Supp. 2d at 1133 (declining "to exercise supplemental jurisdiction" over the plaintiff's remaining state law claims after dismissing the ADA claim at the summary judgment stage, while also "recogniz[ing] that litigation of a new suit in state court may

create some inconvenience to [the] plaintiff"). As such, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

### IV. CONCLUSION

For the reasons provided herein, the Court GRANTS Defendants' Motion. (Doc. 90.) The Court therefore DISMISSES Plaintiff's First Claim, (*see* Doc. 32 ¶¶ 17–38), WITH PREJUDICE. The Court further DISMISSES the remainder of the claims in this case—Plaintiff's Second and Third Claims, (*see id.* ¶¶ 39–51)—WITHOUT PREJUDICE.[4] Plaintiff remains free to file his state law claims in state court.[5]

As the Court has dismissed all of the claims in this action, the Court DIRECTS the Clerk to close this case.

IT IS SO ORDERED.

Dated: **March 28, 2017**                /s/ *Sheila K. Oberto*
                                                                  UNITED STATES MAGISTRATE JUDGE

---

[4] As the Court dismissed Plaintiff's sole federal claim for lack of subject-matter jurisdiction, it "must dismiss the state law claims *without prejudice*." *Rodriguez v. Ralphs Grocery Co.*, 323 F. App'x 617, at *1 (9th Cir. 2009) (emphasis added) (citing *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805–07 (9th Cir. 2001)).

[5] On November 23, 2016, Plaintiff filed a Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("Plaintiff's Motion"), (Doc. 89), in which Plaintiff requests that "summary judgment be granted" on the merits "in [Plaintiff's] favor against Defendants," (*id.*, Ex. 1 at 27). As the Court grants Defendants' Motion, (Doc. 90), and dismisses this matter, it does not reach Plaintiff's Motion.